IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

LISA BARNETTE, et al.,                    )
                                          )
        Plaintiff,                        )
                                          )        CASE NO. 3:05-CV-473-WKW
        v.                                )        (WO)
                                          )
PHENIX CITY, ALABAMA, et al.,             )
                                          )
        Defendants.                       )

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

This cause is before the court on a Motion to Dismiss (Doc. # 11) filed by defendants Grover

Goodrich ("Goodrich") and Heath Taylor ("Taylor").

The plaintiffs originally filed a Complaint in this case on May 20, 2005, asserting claims for

relief under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution; 42

U.S.C. §§ 1983, 1985 and 1986; Ala. Code § 6-6-222; and the common law of Alabama.

For reasons to be discussed, the Motion to Dismiss is due to be GRANTED in part and

DENIED in part.

### II.  MOTION TO DISMISS STANDARD

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief

could be granted under any set of facts that could be proven consistent with the allegations in the

complaint. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Wright v. Newsome,* 795

F.2d 964, 967 (11th Cir. 1986) ("[W]e may not . . . [dismiss] unless it appears beyond doubt that

the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him

or her to relief.") (citation omitted).  In evaluating a motion to dismiss, the court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon*, 467 U.S. at 73.  Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).

### III.  FACTS

_____These are the facts as alleged in plaintiffs' Complaint: Plaintiffs Lisa Barnette, Jerry Barnette, Sara Cruz and C.B. (a minor) are citizens residing in Russell County, Alabama. Defendants Lahr, Walker, Bailey, Nolin, Mitchell, McLaughlin and Barr are police officers employed by Phenix City, Alabama. Defendants Goodrich and Taylor are deputy sheriffs employed by Russell County, Alabama, the county in which Phenix City is located.

On February 10, 2005, plaintiffs Lisa Barnette, Sara Cruz and C.B. were at home. Certain defendants entered the residence by breaking down the door and launching an explosive device into the house while wearing masks and assault gear and carrying weapons. The defendants did not have a warrant to search the home, nor did they obtain the plaintiffs' consent. This sudden entry alarmed and startled the plaintiffs, to the extent that eleven-year-old C.B. jumped out of a bedroom window. When he did this, one of the defendants posted outside the house pointed an automatic weapon at him; frightened, C.B. jumped back through the window and back into the house, injuring himself in the process. Defendants then ordered the three plaintiffs onto the floor, where they were held and guarded by some of the defendants who placed their feet on the plaintiffs' backs and pointed weapons at their heads. C.B. was so frightened by these events that he soiled his clothing. Defendants apparently searched the house, determined that the person for whom they were searching

2

was not there, and then left.

A short while later, defendants Goodrich and Taylor returned to plaintiffs' residence and told plaintiff Lisa Barnette that they suspected that some of the vehicles they saw on the premises might be stolen. Defendants Goodrich and Taylor seized a trailer and three four-wheeled, all-terrain vehicles and left. Plaintiff Jerry Barnette, who works in Georgia, repairs all-terrain vehicles in his spare time. He returned to Phenix City from Georgia on February 12, 2005, and retrieved the seized vehicles.

Plaintiffs claim they have suffered property damage resulting from defendants' abrupt entry into their home, and from the seizure of the vehicles. Plaintiffs also claim they have suffered emotional distress and mental anguish; two of the plaintiffs, Lisa Barnette and C.B., have sought therapy. The plaintiffs' Complaint alleges thirteen separate causes of action against the defendants: Count I - Unlawful Entry; Count II - Unlawful Search and Seizure; Count III - Unlawful Taking; Count IV - Excessive Force; Count V - Conspiracy to Violate Civil Rights; Count VI - Neglect to Prevent Violation of Civil Rights; Count VII - Trespass; Count VIII - Assault and Battery; Count IX - Invasion of Privacy; Count X - Intentional Infliction of Emotional Distress; Count XI - Conversion and/or Intermeddling with Chattels; Count XII - Neglectfulness, Unskillfulness or Carelessness; and Count XIII - False Arrest, False Imprisonment.

## IV. DISCUSSION

*A.* ____*State Law Claims*

Defendants Goodrich and Taylor move to dismiss all of the plaintiffs' state law claims against them based on absolute sovereign immunity. The defendants argue that sheriffs and deputy sheriffs may not be sued under state law for money damages while acting within the scope of their

official duties. The Alabama Supreme Court has held that "[a]s an executive officer, a sheriff is immune from being sued in the execution of the duties of his office." *Ex parte Haralson*, 853 So.2d 928, 932 (Ala. 2003). Further, "deputy sheriffs are immune to the same extent sheriffs are immune." *Id*. Both the Eleventh Circuit and the Supreme Court have affirmed this holding. *See Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996) ("Under Alabama law, both sheriffs and deputy sheriffs are considered executive officers of the state, immune from suit"); *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 793 (1997) ("Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama"). While it is true, as plaintiffs argue, that state officers in general are not protected by immunity if they have acted "willfully, maliciously, illegally, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law," *Phillips v. Thomas*, 555 So.2d 81, 83 (Ala. 1989), a special exception has been carved out for sheriffs and deputy sheriffs, as demonstrated by the cases noted above.

The plaintiffs argue that their claims are against Goodrich and Taylor in their individual capacities, as opposed to their official capacities, and so state immunity should not apply. Alabama law, however makes no distinction between sheriffs acting in their official capacity versus their individual capacity. *See Tinney*, 77 F.3d at 383 n.3 ("Alabama law affords . . . immunity to state officers sued in both their official and individual capacities"). The court finds, therefore, that because Defendants Goodrich and Taylor are deputy sheriffs, they are entitled to absolute sovereign immunity from all of the plaintiffs' state law claims. The defendants' Motion to Dismiss all state law claims against them is due to be granted.

B.    *Eleventh Amendment*

Defendants Goodrich and Taylor also assert that plaintiffs' federal claims against them in

4

their official capacities are essentially claims against the state of Alabama and therefore are due to be dismissed under the Eleventh Amendment. The Eleventh Amendment provides that a state "is immune from suits by its own citizens." *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 446 (2004); *see also Ex parte Young*, 209 U.S. 123, 150 (1908). The United States Supreme Court has held that suits against government officials acting in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Suits against state officials in their official capacity therefore should be treated as suits against the State. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

As discussed above, in Alabama, sheriffs are considered to be state officials. *See Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001). Further, a sheriff's immunity "extends to deputy sheriffs because of their traditional function under Alabama law as the sheriff's alter ego." *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1527 (11th Cir. 1990). Therefore, suits against deputy sheriffs in Alabama acting in their official capacities should be treated as suits against the state, which are barred under the Eleventh Amendment.

In this case, plaintiffs claim that they have sued defendants Goodrich and Taylor in their individual capacities, not in their official capacities.[1] Accordingly, to the extent that plaintiffs' federal claims could be interpreted to be against defendants Goodrich and Taylor in their official capacities, the Court concludes that the motion to dismiss is due to be granted as to those claims.

C.    *Fifth Amendment*

Defendants also assert that plaintiffs fail to allege a valid Fifth Amendment claim against

---

[1] State employees may be sued in their individual capacities without implicating Eleventh Amendment protections. *See Jackson v. Georgia Dept. of Transp.*, 16 F.3d 1573, 1576 (11th Cir. 1994).

them. Defendants argue that, because the Fifth Amendment's due process clause applies only to the federal government and not to state and local governments, their actions cannot implicate the Fifth Amendment. Plaintiffs respond that they are seeking relief under the Just Compensation Clause of the Fifth Amendment, not the due process clause, and that the Just Compensation Clause *does* apply to state actions. It is true that the Just Compensation Clause of the Fifth Amendment applies to states. *See Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 307 (2002) ("Often referred to as the 'Just Compensation Clause,' the final Clause of the Fifth Amendment provides: '. . . nor shall private property be taken for public use without just compensation.' It applies to the States as well as the Federal Government.") (citations omitted). *See also Lingle v. Chevron U.S.A. Inc.*, 125 S. Ct. 2074, 2080 (2005).

In the present case, the plaintiffs have alleged two instances of Fifth Amendment violations. One instance involves the seizure of plaintiffs' four-wheeled vehicles by defendants Goodrich and Taylor; the other instance involves the damage to the plaintiffs' house that was incurred by several defendants' forced entry into the home. Each of these alleged violations will be addressed separately below.

The analysis for a claim under the Just Compensation Clause requires more than simply an allegation that a government agent has asserted control over an individual's private property. The claimant must prove (1) that there was a compensable "taking" of property such that (2) the claimant has suffered some pecuniary harm. *See Reahard v. Lee County*, 968 F.2d 1131 (11th Cir. 1992) (finding that the question inherent in a just compensation claim is whether the government action goes so far as to be taking); *Brown v. Legal Foundation of Washington*, 538 U.S. 216, 236 (2003) (finding that "the private party 'is entitled to be put in as good a position pecuniarily as if his

property had not been taken. He must be made whole but is not entitled to more'")(citation omitted). At least one federal district court has found that police appropriation of an individual's private personal property can amount to a taking. *See Pottinger v. City of Miami*, 810 F.Supp. 1551, 1570 (S.D. Fla. 1992) (finding that police officers' seizure of homeless persons' personal property violated the Fifth Amendment).

In order to have a viable claim under the Just Compensation clause, plaintiffs must be able to show that they suffered some monetary loss. With regard to plaintiffs' four-wheeled vehicles that were seized and later returned, plaintiffs would have to demonstrate that the loss of these vehicles for two days caused actual pecuniary harm. In a similar case, the Federal Claims Court, relying on the reasoning of the Federal Circuit Court of Appeals and the Supreme Court, held that government seizure and temporary retention of property does not constitute a compensable "taking" under the Fifth Amendment when the property is later returned to the owner. *Golder v. United States*, 15 Cl.Ct. 513, 519 (Cl.Ct. 1988) (holding that government seizure and temporary possession of an aircraft did not amount to a Fifth Amendment taking). Because the plaintiffs' vehicles were returned after two days, and because no pecuniary harm from this seizure has been alleged, the plaintiffs have not stated a claim for a Fifth Amendment constitutional violation based on the defendants' seizure of the four-wheeled vehicles.

With regard to the damage inflicted upon the Barnette home, courts have been reluctant to find that this type of harm amounts to a "taking" under the Fifth Amendment. While it is true that plaintiffs have alleged actual pecuniary harm in their Complaint,[2] the damage in question was carried

---

[2] Plaintiffs allege in their Complaint that defendants "gained entry to Plaintiffs' residence by means of breaking down the door, destroying the door and door frame." Compl. ¶ 22. They further allege that defendants "launched an explosive device into the residence, which device exploded with great and destructive effect, causing

out pursuant to a police search. The Third Circuit recently examined a similar case and found that "a temporary seizure of property in order to search that property is a permissible exercise of the government's police – as opposed to its eminent domain – power." *Jones v. Philadelphia Police Dept.*, 57 Fed. Appx. 939, 942 (3rd Cir. 2003). *See also Lawmaster v. Ward*, 125 F.3d 1341, 1351 (10th Cir. 1997) (court found that plaintiff who alleged officers had ransacked his home during a search failed to "allege any facts showing how his property was taken for public use in violation of the Fifth Amendment"); *Birdsall v. City of Hartford*, 249 F. Supp. 2d 163 (D.Conn. 2003) (court held that plaintiff did not have a Fifth Amendment takings claim where police officers' conduct resulted in loss of business for arrestee). Because courts have not recognized property damage or loss resulting from a police search as compensable under the Fifth Amendment's Just Compensation Clause, plaintiffs have failed to allege any cognizable constitutional violations under the Fifth Amendment. Defendants' Motion to Dismiss is due to be granted as to the Fifth Amendment claims.

D.     *Fourteenth Amendment*

Defendants argue that plaintiffs' claims based on the Fourteenth Amendment are due to be dismissed because their claims of improper search and seizure are better analyzed under the Fourth Amendment. The Supreme Court has held that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 (1997). *See also Albright v. Oliver*, 510 U.S. 266 (1994).

---

more than $5,000.00 in damage to the residence and to items of personal property belonging to Plaintiffs." Compl. ¶ 23. Later in the Complaint, under Count III - Unlawful Taking, plaintiffs allege that defendants' actions caused damage by "destroying portions of their home, destroying or removing personal effects consisting of furnishings, carpets, memorabilia, mementoes, items of decor, and other such property." Compl. ¶ 83.

Plaintiffs agree that their Fourth Amendment search and seizure claims should be analyzed under the Fourth Amendment exclusively, but argue that defendants violated their substantive due process right under the Fourteenth Amendment to "peaceful enjoyment of their property." Plaintiffs' Response at 8. Following the reasoning of *Lanier*, however, plaintiffs' claims concerning property damage can be adequately addressed under the Fourth Amendment. *See United States v. Ramirez*, 523 U.S. 65, 70-71 (1998) (finding that excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment).

Further, defendants argue that any procedural due process claims plaintiffs have made under the Fourteenth Amendment are also due to be dismissed because plaintiffs have not properly alleged that no adequate state remedy exists. Plaintiffs do not dispute this in their response to the motion to dismiss, and thus the court finds that any procedural due process claims against the Defendants are due to be dismissed.

Therefore, defendants' Motion to Dismiss all claims based on substantive or procedural due process rights under the Fourteenth Amendment is due to be granted.

E.    *Qualified Immunity*

Defendants Goodrich and Taylor claim that they are entitled to qualified immunity as to plaintiffs' § 1983 claims because plaintiffs have pled only "vague and conclusory allegations" which are "insufficient to state a claim under § 1983." Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir. 1991). It applies to the assertion of constitutional and federal statutory claims brought against state actors. *See Gonzalez v. Lee County Housing Auth.*, 161 F.3d 1290, 1295 (11th Cir. 1998). "Qualified immunity offers complete protection for government officials sued in their

9

individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).  While qualified immunity is typically addressed at the summary judgment stage of a case, the defense may be raised and considered on a motion to dismiss; the motion will be granted if the "complaint fails to allege the violation of a clearly established constitutional right."  *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002) (quoting *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001)).

In their Complaint, plaintiffs allege § 1983 claims based on violations under the Fourth, Fifth and Fourteenth Amendments. *See* Compl. ¶¶ 64-102. Because the court has already found no applicable violations under the Fifth or Fourteenth Amendments, the analysis of qualified immunity will consider only the plaintiffs' Fourth Amendment claims.

Qualified immunity analysis consists of three distinct steps: First, the public official must have been acting within the scope of his or her discretionary authority; second, the official's acts must have violated a constitutional right of the plaintiff; third, that constitutional right must have been clearly established at the time of the violation. The Court will address each of these steps in the analysis separately.

1. *Discretionary Authority*

In order to receive qualified immunity, a public official has the burden to "first prove that he

was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee*, 284 F.3d at 1194 (internal quotation marks omitted); *see Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004); *Lumley v. City of Dade City*, 327 F.3d 1186, 1194 (11th Cir. 2003) ("If the defendants were not acting within their discretionary authority, they are ineligible for the benefit of qualified immunity"). In the present case, neither party has argued that defendants Goodrich and Taylor were not acting within their discretionary authority at the time they entered the Barnette home; plaintiffs, in fact, asserted in their Complaint that defendants were "acting within the line and scope of their authority" during the incidents in question. Compl. ¶ 21. Because the plaintiffs do not dispute that Goodrich and Taylor were acting within their discretionary authority, and because Goodrich and Taylor were engaged in acts typically performed by police officers–that is, acts involving search and seizure–the court will presume that defendants were acting within the scope of their discretionary authority.

### 2.    *Constitutional Violation*

Once it is established that defendants were acting within their discretionary authority, the burden shifts to the plaintiffs to prove that qualified immunity is not warranted. *Lee*, 284 F.3d at 1194. The Supreme Court has articulated a two-pronged test to aid in this analysis. First, the court must determine whether the allegations in the plaintiffs' complaint establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). *See also Saucier v. Katz*, 533 U.S. 194, 201 (2001) (stating that the court must evaluate the complaint to determine if its allegations, assuming they are true, plead a cognizable violation of the constitution). In determining whether plaintiff has

established a constitutional violation, the court looks at the facts as alleged in the Complaint.[3] In this case, plaintiffs pled in sufficient detail the facts of their claims. Plaintiffs have alleged that defendants used force to enter their home, that defendants acted without a warrant and without probable cause, and that defendants were not acting under exigent circumstances. Plaintiffs have also alleged that defendants used unreasonable force during the incident, that defendants damaged plaintiffs' property, and that plaintiffs were not compensated for such damage. These basic facts, laid out in paragraphs 20 through 55 of the Complaint, are sufficient allegations of constitutional violations under the Fourth Amendment to withstand a motion to dismiss.

          *2(a).   Fourth Amendment Search and Seizure Claim*

     "Because '"the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion"' stands '"[a]t the very core" of the Fourth Amendment,' our cases have firmly established the '"basic principle of Fourth Amendment law" that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (citations omitted). "Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984).

     In the present case, plaintiffs have alleged that the defendant officers did not possess a search warrant, thus creating a 'presumption of unreasonableness.' From the Complaint, no exigent

_____

[3] Plaintiffs argue in their Response to the Motion to Dismiss that a heightened pleading standard is not required for causes of action under 42 U.S.C. § 1983. *See* Pl.'s Resp. to Mot. to Dismiss at 2-4. Because plaintiffs have pled sufficient details upon which to evaluate the defendants' claims of qualified immunity, the court does not address the arguments regarding a heightened pleading standard.

circumstances are apparent that would overcome this presumption. Plaintiffs' Complaint alludes to the fact that the defendants may have been trying to execute an arrest warrant[4] when they entered the Barnette home; however, the Supreme Court has held that law enforcement officers may not search for the subject of an arrest warrant in the home of a third person without first obtaining a search warrant for that home. *Steagald v. United States*, 451 U.S. 204, 205 (1981). Because the Complaint states that the officers entered the Barnette home to search for a third party without a search warrant and without the presence of exigent circumstances, the plaintiffs have alleged sufficient facts to state a Fourth Amendment violation of their right to be free from an unreasonable search.

_____*2(b).  __Fourth Amendment Excessive Force Claim*

Claims that law enforcement officers have used excessive force are analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 385, 395 (1989). To determine whether the amount of force used was reasonable, the court looks at "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396. The Eleventh Circuit has applied a balancing test utilizing three factors to determine whether or not the amount of force used by a law enforcement officer was reasonable. *Draper v. Reynolds*, 369 F.3d 1270, 177-78 (11th Cir. 2004). These factors are: (1) the need for the application of force; (2) the relationship between the need and amount of force used; and (3) the extent of the injury inflicted. *Id*.

In the present case, viewing the facts in the light most favorable to the plaintiffs, these factors

---

[4] *See* Compl. ¶ 35 ("Following the ascertainment that the person for whom they were searching was not present in the residence . . ."); *see also* Compl. ¶ 54 ("There existed no search warrant that would have permitted entry into the private residence of an innocent party for the purpose of arresting a criminal suspect").

clearly weigh in favor of the plaintiffs. Nothing in the pleadings suggests any need for force to have been used against the occupants of the Barnette home. It is not clear from the facts before the Court that the officers had any legitimate reason for entering the home. The officers apparently did not have a search warrant for the house, and there appear to have been no exigent circumstances that would have excused their entering the house without a warrant. Additionally, even if an officer does have a search warrant, that officer is required by federal law to knock on the door and announce his presence before using force to enter a home. *See* 42 U.S.C. § 3109. Here, plaintiffs allege the officers did not have a search warrant, did not knock and announce their presence, and proceeded to forcefully break into the home anyway, destroying the door in the process. The officers then allegedly threw an explosive device into the house, causing further property damage. The officers held the plaintiffs on the floor by putting their feet on the plaintiffs' backs and pointing automatic weapons at the plaintiffs' heads. According to the facts alleged in the Complaint, none of the plaintiffs prevented the officers from searching the house or resisted in any way. The Eleventh Circuit has previously held that when police officers who did not have a warrant entered a building through the use of force and held the occupants at gunpoint – in spite of the fact that the occupants did not impede the officers' search of the building – such force could be found unreasonable. *See Ortega v. Schramm*, 922 F.2d 684, 696 (11th Cir. 1991). These circumstances are present in this case, where armed officers used force to enter the Barnette home and held the occupants at gunpoint, without any resistance on the part of the occupants. If proven, the amount of force used could be found to be disproportionate to the amount that would have been required in this case.

The factors in the Eleventh Circuit's balancing test clearly weigh in favor of the plaintiffs. Therefore, the plaintiffs have alleged sufficient facts to establish a violation of their Fourth

Amendment right to be free from the use of excessive force.

### 3.    *Clearly Established Right*

To the extent that the plaintiffs' complaint sufficiently alleges constitutional violations, the court must pursue the final step in the qualified immunity inquiry, which is to determine whether the right in question was clearly established. *Saucier*, 533 U.S. at 201. This inquiry requires the court to conduct a careful examination of the factual allegations, one that asks "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id*. at 202; *see Wilson v. Layne*, 526 U.S. 603, 615 (1999) (stating that "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established"). Essentially, a defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional right. *Hope*, 536 U.S. at 741. This warning may be imparted through the words of the federal statute or constitutional provision itself, through pre-existing case law establishing broad legal principles, or through fact-specific precedent. *Vinyard*, 311 F.3d at 1350-53.

### 3(a).    *Fourth Amendment Search and Seizure Claim*

The Fourth Amendment protection against unreasonable searches and seizures is bedrock for the foundation of this republic. *See Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992). Specifically, warrantless searches of an individual's home are presumptively unreasonable. *See Payton v. New York*, 445 U.S. 573, 586 (1980). In addition, the Supreme Court held in *Steagald* that law enforcement officers may not search for the subject of an arrest warrant in the home of a third person without first obtaining a search warrant for that home. *Steagald*, 451 U.S. at 205. *See also United States v. Bervaldi*, 226 F.3d 1256, 1267 (11th Cir. 2000) ("In *Steagald*, the Supreme Court held that a search warrant was required to enter one person's residence to execute an arrest warrant on another

15

person believed to be in that residence").

Case law involving Fourth Amendment search and seizure claims has clearly established these broad legal principles, giving law enforcement officers fair warning of the type of conduct that may violate a citizen's right to be free from unreasonable search and seizure. Therefore, the court finds that defendants' actions in this case, if proven, could be found to have violated a clearly established constitutional right, and the defendants are not protected by qualified immunity.

### 3(b).    Fourth Amendment Excessive Force Claim

As discussed above, given the facts alleged in the plaintiffs' complaint, a reasonable law enforcement officer should have known that his actions constituted excessive force. In the context of a qualified immunity analysis regarding an excessive force claim, the court looks to whether the defendant officers' conduct was objectively reasonable in light of the facts confronting the officers. *Vinyard*, 311 F.3d at 1347. The court must ask whether a reasonable law enforcement officer would have believed that the level of force used was necessary given the situation. *Id*. Given the facts alleged in the complaint, and construing the facts in the light most favorable to the plaintiffs, the defendants violently broke into the Barnette's home without any justifiable cause and held the occupants at gunpoint when there was no evidence that they presented any danger or were in any way resisting the officers' unwarranted search. A similar fact pattern occurred in *Ortega v. Schramm*, 922 F.2d 684 (11th Cir. 1991), in which officers, acting without a warrant, entered a filling station by shooting the padlock off of the door and held the occupants at gunpoint while searching the building. *Id*. at 687. In that case, the Eleventh Circuit found that the facts of the case provided "ample support" for a jury's finding of excessive force. *Id*. at 696. In the present case, given that broad principles of law regarding excessive force are well-established, and given that a precedent

16

case with similar facts exists, the court finds that the plaintiffs' allegations state a constitutional violation of a clearly established right.

To summarize the qualified immunity claims: Plaintiffs have alleged facts sufficient to establish constitutional violations based on Fourth Amendment claims of unreasonable search and seizure and excessive force. Moreover, plaintiffs have alleged facts sufficient to find that these violations were of clearly established constitutional rights. Therefore, defendants' Motion to Dismiss these Fourth Amendment claims based on qualified immunity is due to be denied.

F.      Conspiracy Claims

Defendants argue that plaintiffs' conspiracy claims under 42 U.S.C. §§ 1983, 1985 and 1986 are due to be dismissed. Plaintiffs respond that they have not claimed conspiracy under § 1983, only under §§ 1985 and 1986. As the court can find no claim of conspiracy other than the alleged violations of § 1985 and § 1986 in plaintiffs' Complaint, defendants' Motion to Dismiss as to any other conspiracy claims is due to be denied as moot.

Plaintiffs argue that they have valid conspiracy claims under both 42 U.S.C. § 1985 and 42 U.S.C. § 1986. To state a claim for conspiracy under 42 U.S.C. § 1985(3), plaintiffs must show "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of privilege of citizenship." *Zezulewicz v. Port Authority of Allegheny County*, 290 F.Supp.2d 583, 599 (W.D.Pa. 2003)(citing *Carpenters v. Scott*, 463 U.S. 825 (1983)). While it is possible that these basic elements may be found in plaintiffs' Complaint, there is one overarching element of a § 1985(3) conspiracy claim that has not been alleged in this case,

17

and that is a discriminatory intent on the part of the defendants. The Supreme Court has held that the language of § 1985(3) requires "'intent to deprive of equal protection, or equal privileges and immunities,'" meaning that "'there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268-69 (1993) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). In this case, plaintiffs' Complaint does not allege that any of the actions taken by defendants were in any way motivated by racial or other class-based animus. The plaintiffs, therefore, have not properly alleged a conspiracy claim under 42 U.S.C. § 1985(3), and the defendants' Motion to Dismiss any such claims is due to be granted.

The plaintiffs have also alleged violations under 42 U.S.C. § 1986, which creates a cause of action against any person who knows of a § 1985(3) conspiracy and does not act to prevent such conspiracy from being carried out. The court agrees with defendants that § 1986 claims are entirely derivative of § 1985 claims, and that without a valid § 1985 claim, plaintiffs also lack a valid § 1986 claim. Defendants' Motion to Dismiss any claims under § 1986 is therefore due to be granted.

G. _____*Injunctive Relief*

Defendants seek dismissal of plaintiffs' claims for injunctive relief on the ground that plaintiffs lack standing to ask for such relief. In response, plaintiffs claim they are not seeking injunctive relief in this action. The court can find no allegation in plaintiffs' Complaint that they are asking for injunctive relief; therefore, Defendants' Motion to Dismiss any claims for injunctive relief is due to be denied as moot.

H. _____*Declaratory Judgment*

Defendants seek dismissal of plaintiffs' claims for declaratory judgment under both federal

and state law. Plaintiffs argue that they are entitled to ask for declaratory judgment because 42 U.S.C. § 1983 authorizes plaintiffs to seek equitable remedies. It is true that § 1983 allows a party to pursue "an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. However, a claim for declaratory judgment requires either an ongoing and continuous controversy or the significant likelihood of harm in the future. "Past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects. To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future. Similar reasoning has been applied to suits for declaratory judgments." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (internal quotations and citations omitted).

In the present case, plaintiffs have alleged multiple violations of their constitutional rights, but all of these violations occurred in the past. Plaintiffs have not alleged ongoing or continuous harm currently being caused by defendants Goodrich and Taylor, nor have they demonstrated the existence of a threat of future harm. Because plaintiffs have not asserted that there is any harm other than past injury in this case, the court finds they lack standing to seek a declaratory judgment under federal law.

The requirement is similar for a plaintiff seeking a remedy under Alabama's Declaratory Judgment Act, which gives courts the "power to declare rights, status, and other legal relations." Ala. Code § 6-6-222. The Alabama Supreme Court has held that in cases "in which a cause of action has already accrued, a court will not enter a declaratory judgment if there is not an anticipated future injury." *Carrell v. Masonite Corp.*, 775 So.2d 121, 125 (Ala. 2000). Because the cause of action in this case has already accrued, and the plaintiffs have not alleged any anticipated future injury, the

court finds that the plaintiffs also lack standing to seek a declaratory judgment under Alabama state law.

For the reasons described above, the Court finds that the defendants' Motion to Dismiss the plaintiffs' claims for declaratory judgment is due to be granted.

## V.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

1.  Defendants' Motion to Dismiss all state law claims against them is GRANTED.

2.  To the extent that Plaintiffs' federal claims could be interpreted to be against Defendants Goodrich and Taylor in their official capacities, Defendants' Motion to Dismiss those claims is GRANTED.

3.  Defendants' Motion to Dismiss the Fifth Amendment claims against them is GRANTED.

4.  Defendants' Motion to Dismiss all claims against them based on substantive or procedural due process rights under the Fourteenth Amendment is GRANTED.

5.  Defendants' Motion to Dismiss the Fourth Amendment search and seizure claims against them on qualified immunity grounds is DENIED.

6.  Defendants' Motion to Dismiss the Fourth Amendment excessive force claims against them on qualified immunity grounds is DENIED.

7.  Defendants' Motion to Dismiss conspiracy claims against them under 42 U.S.C. §§ 1985 or 1986 is GRANTED, and DENIED as moot as to any § 1983 conspiracy claims.

20

8.  Defendants' Motion to Dismiss any claims for injunctive relief is DENIED as moot.

9.  Defendants' Motion to Dismiss any claims for declaratory judgment is GRANTED.

Done this 15th day of March, 2006.

＿＿＿＿＿＿/s/   W.  Keith Watkins＿＿＿＿＿＿＿＿

UNITED STATES DISTRICT JUDGE