IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LISA BARNETTE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 3:05-cv-00473-WKW |
| ) | |
| CITY OF PHENIX CITY, et al., ) | |
| ) | |
| Defendants. ) | |

### AFFIDAVIT OF LEN WILLS

STATE OF GEORGIA )
)
COUNTY OF MUSKOGEE )

BEFORE ME, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Len Wills, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1. My name is Len Wills. I am over the age of nineteen and competent to make this affidavit.

2. I am a detective for the City of Columbus Police Department in Columbus, Georgia and have served in that capacity for 18 years. I have been a law enforcement officer for 22 years.

3. In and prior to February 2005, I investigated, along with Detective Sherry Zieglar, crimes committed by Kenneth D. Thrower. This investigation was prompted by a report given to me by Mr. Thrower's 12-year-old daughter that he had been molesting her. After conducting an investigation, a felony warrant for the arrest of Kenneth D. Thrower was issued. The charge contained in that warrant was Aggravated Child Molestation in violation of


DEFENDANT'S EXHIBIT A

Georgia Code § 16-6-4. A true and correct copy of that arrest warrant is attached hereto as Exhibit "1" and incorporated herein as if fully set forth.

4. Mr. Thrower's wife, Lisa Thrower, was in my office on February 10, 2005. She told me that Mr. Thrower had fled to Russell County, Alabama, where his family lived. Mrs. Thrower's indication was that Mr. Thrower would be stopping briefly in Russell County, Alabama, to see his mother, but was not intending to stay there for any significant amount of time. Mr. Thrower was aware of the arrest warrant and advised her that he was not going to be taken to jail. Mrs. Thrower also advised us that Mr. Thrower was armed, and was potentially homicidal and/or suicidal. Specifically, she informed me that Mr. Thrower had a hand gun in his truck.

5. I have personally known the Thrower family, including Kenneth Thrower, for at least thirty (30) years. I am personally aware that Mr. Thrower's brother had committed suicide. Therefore, I was greatly concerned at Lisa Thrower's statement that Mr. Thrower was armed and potentially homicidal and/or suicidal.

6. Based on Ms. Thrower's information, I called the Russell County Sheriff's Office and spoke with Lieutenant Steve Osteen. I advised Lieutenant Osteen that the City of Columbus Police Department needed his help in getting a fugitive who was armed and dangerous. I faxed a copy of the arrest warrant, to the Russell County Sheriff's Office.

7. Immediately after speaking with Lieutenant Osteen, I made contact via telephone with Lieutenant Heath Taylor, Chief Investigator for the Russell County Sheriff's Office. I relayed the same information to Lieutenant Taylor, and informed him that Mr. Thrower was believed to be at his mother's address on or near Highway 80 in Russell County. I also gave him a description of the truck Mr. Thrower was driving.

8.  Shortly thereafter, while Ms. Thrower was still in my office, I spoke again with Lieutenant Taylor and gave him the address to Mr. Thrower's sister, Lisa Barnette's, house on Highway 80 in Russell County. Lieutenant Taylor advised me that he had driven by the house and did not see Mr. Thrower's truck. During that very conversation, however, Lisa Thrower was on her cell phone speaking with Mr. Thrower. She informed me that the caller identification feature of her phone indicated that Mr. Thrower had called her and was talking at that very moment from his sister's house. I relayed that information to Lieutenant Taylor. I also advised Lieutenant Taylor, based on information from Ms. Thrower, that Ms. Barnett's house was very close to Mr. Thrower's mother's house, and that his truck could be parked at that location. I also advised him, based on information from Ms. Thrower, that there was a large supply of guns and ammunition at his sister's house. I told Lt. Taylor to be careful due to Mr. Thrower's apparent desperate and homicidal condition.

9.  During the foregoing events and conversations, Ms. Thrower was repeatedly telling me that her husband was dangerous, and that he had indicated that he was not going to prison. I took these statements to mean that Mr. Thrower may violently resist arrest. I knew this was a serious and tense situation and was concerned that someone could get shot. I communicated this concern to Lt. Taylor.

10. I swear to the best of my present knowledge that the above statements are true; that I am competent to make this affidavit; and, the above statements are made by drawing from my personal knowledge of the situation.

/s/ Len Wills
LEN WILLS

SWORN TO and SUBSCRIBED before me this 12'th day of April, 2007.

*Norma J. Rebout*
_____
NOTARY PUBLIC
My Commission Expires: My Commission Expires September 21, 2008