IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| LISA BARNETTE, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | CASE NO. 3:05-cv-473-WKW |
| | * | |
| CITY OF PHENIX CITY, et al., | * | |
| | * | |
| Defendants. | * | |

## AFFIDAVIT OF CAPT. ROBERT CASTEEL

**BEFORE ME,** _Angela Harrison_, a notary public in and for said County and State, personally appeared **CAPT. ROBERT CASTEEL**, and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

"My name is Robert Casteel. I am over the age of twenty-one (21) and am personally familiar with all the facts set forth in this affidavit. I have been employed with the Phenix City Police Department as Special Response Team Commander (Commander for Phenix City's SWAT Team) since 1992. I have served as Captain over the Patrol Division since 2002.

On February 10, 2005, I was at the Russell County Sheriff's Department with members of the Russell County SWAT team and Phenix City SWAT team who were being debriefed from operations which they had been executing jointly earlier that morning. During this debriefing, I was informed by Lt. Heath Taylor that the City of Columbus, Georgia Police Department had requested his assistance in apprehending Kenneth D. Thrower pursuant to a Georgia arrest warrant for Aggravated Child



Molestation. Lt. Taylor was informed that Mr. Thrower could be located at his mother's residence on Highway 80 in Russell County. Since this residence exists beyond Phenix City's limits, Lt. Taylor assumed jurisdictional command over the SWAT team that included both City and County officers. Since the County maintained jurisdiction, the role of the members of Phenix City's SWAT team was strictly supportive.

Subsequent to assuming command, Lt. Taylor instructed the SWAT team that Mr. Thrower (1) was aware of the arrest warrant and had made statements to the effect that he "was not going to be taken to jail," (2) was armed (that he had a handgun in his vehicle-- believed to be a truck), (3) was potentially homicidal and/or suicidal, and (4) that he was a flight risk. Lt. Taylor instructed the team to assemble some distance down Highway 80 from Mr. Thrower's mother's house and await further contact.

Lt. Taylor and I subsequently left the Sheriff's office and proceeded toward the address Lt. Taylor had received information indicating Mr. Thrower's location. While Lt. Taylor and I were surveying the area, he received information via cell phone indicating that Mr. Thrower was at the home of his sister, Lisa Barnette, on Highway 80 and was given addresses to a couple of houses down from Mr. Thrower's mother. Lt. Taylor was informed that since Ms. Barnette's house was located very close to Mr. Thrower's mother's house, his truck could be parked at that location. He was further informed that Mr. Thrower would have access to a large supply of guns and ammunition at Ms. Barnette's house.

After surveying Ms. Barnette's house, Lt. Taylor considered setting up a perimeter of officers to covertly observe the house in an attempt to arrest Mr. Thrower when he exited. However, given the topography of the land and the lack of adequate

cover for the observing officers, Lt. Taylor determined there would be no way to adequately secure the perimeter without alerting occupants to our presence, potentially initiating a shootout or hostage situation.

Based on all information available, Lt. Taylor determined that exigent circumstances existed to justify entering the house without a search warrant to effectuate Mr. Thrower's arrest.

Lt. Taylor subsequently directed the SWAT team to prepare to enter the house. Lt. Taylor and I then drove down Highway 80 to turn around and approach the house from the opposite direction. At that time, Lt. Taylor received information from Investigator Goodrich that he had obtained a fugitive warrant signed by a Russell County judge.

At Lt. Taylor's direction, the SWAT team opened the front door of the residence and deployed a "flash bang" distraction and diversionary device before entering to secure the house and its occupants. The SWAT team took approximately thirty (30) seconds to secure the house, at which time Lt. Taylor and I entered. During the search, the SWAT team discovered over thirty (30) weapons, including handguns, long guns and shotguns, and over one thousand (1,000) rounds of ammunition. However, Mr. Thrower was not present. Lt. Taylor and I were informed by Lisa Barnette that we had just missed Mr. Thrower as he left moments before to meet his mother for lunch at a local restaurant, El Vaquero.

Subsequent to learning Mr. Thrower's location, Lt. Taylor and I, along with the SWAT team, left the Barnette residence and proceeded to El Vaquero. Upon arrival, Lt. Taylor and I observed a truck matching the description of the vehicle Mr. Thrower was reportedly driving. Lt. Taylor instructed the SWAT team to surround the restaurant while

Investigator Goodrich, Lt. Taylor and I entered the restaurant and arrested Mr. Thrower without incident.

I learned subsequent to the arrest that there were several packed bags in Mr. Thrower's truck, along with a loaded handgun."

Further affiant sayeth not.

_____
CAPT. ROBERT CASTEEL

STATE OF ALABAMA )
COUNTY OF RUSSELL )

I, Angela Harrison, a Notary Public in and for said State and County, hereby certify that CAPT. ROBERT CASTEEL, who being known to me and who being duly sworn, and whose name is signed to the foregoing document, acknowledged before me on this date that being first informed of the contents of said document, having read the same, and understanding its purpose and effect, voluntarily executed the same upon the above-stated date.

SWORN TO and SUBSCRIBED BEFORE ME on this the 16 day of April, 2007.

_____
NOTARY PUBLIC
My Commission Expires: 5/24/2009

(NOTARIAL SEAL)